# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

GARY RANDALL PENICK                  DOCKET NO. 6:10-cv-0339

VS.                                  JUDGE DOHERTY

CITY OF MORGAN CITY,                 MAGISTRATE JUDGE HANNA
ET AL.

## REPORT AND RECOMMENDATION

This matter is before this Court for initial review. *Pro se* plaintiff Gary Randall Penick, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on January 11, 2010.[1]  At that time, plaintiff was a detainee awaiting trial on unspecified charges.  He was in the custody of the St. Mary Parish Sheriff and detained at the St. Mary Parish Law Enforcement Center in Centerville, Louisiana.[2]  He complains that he was denied prompt and appropriate medical care while he was detained at the Morgan City Jail (MCJ) from November 20, 2009 to December 9 or 10, 2009.  Plaintiff sued the City of Morgan City, MCJ's Warden

---

[1]      Plaintiff filed his suit in the United States District Court for the Eastern District of Louisiana.  Since venue was inappropriate, that court transferred the complaint to this court on February 22, 2010.  [Rec. Doc. 5]

[2]      During the *Spears* hearing on August 3, 2010, the plaintiff advised that he anticipated being released from custody in the near future.  Upon his release, Penick advised the undersigned and provided a new address.

Herbert Johnson, and MCJ Supervisor Stacy Labelle praying for compensatory, nominal, and punitive damages.

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  For the following reasons, it is recommended that the plaintiff's claims be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

## BACKGROUND

### 1.   ORIGINAL COMPLAINT [REC. DOC. 1]

The following facts are set forth in the plaintiff's original complaint.  On November 20, 2009, plaintiff was arrested and booked into the MCJ.  Plaintiff advised the jail staff that he suffered from hypoglycemia.[3]  In the early morning hours of November 21, 2009, plaintiff requested a glucose test.  Plaintiff was advised that the glucose meter was broken.  On November 22, 2009, MCJ acquired a new meter.  On that date, a glucose test was administered, and plaintiff's glucose level was 48.

---

[3]     Hypoglycemia is a condition that occurs when your blood sugar (glucose) is too low, that is below 50 mg/dL.  Medline Plus, Encyclopedia, a Service of the U.S. National Library of Medicine and the National Institutes of Health.   http://www.nlm.nih.gov/medlineplus/encyclopedia.html

On November 23, plaintiff requested another reading.  His request was ignored.
On November 24, another reading was taken, and it revealed a glucose level of 62.
Plaintiff requested medical attention from the corrections officers and was advised
to submit a sick-call request to the nurse.  On November 26, plaintiff requested sick-
call and was advised that the nurse was on vacation.

Plaintiff requested sick-call again on December 2.   On the morning of
December 3, he was examined by Nurse Kathy Thornton who, in the presence of
Warden Johnston and Supervisor Labelle, prescribed daily glucose tests.

On the evening of December 3, plaintiff's request for a glucose test was
ignored or forgotten.  On the following date, December 4, his request for a test at 4:00
p.m. was granted, but not until 10:00 p.m.  Plaintiff was also told that he was not on
the list for regular glucose testing.

On December 5, plaintiff's request at 4:30 a.m. was not heeded; however, he
was tested at 10:00 p.m, and the test revealed a glucose level of 38.

On December 6, plaintiff experienced swelling in his hands and impaired
vision, and he requested medical attention.  Plaintiff's requests to two corrections
officers for glucose testing were ignored; however, at 10:00 p.m. his glucose was
tested and the test revealed a glucose level of 44.

On December 7, plaintiff's glucose level was 84.  On December 8 at 7:30 a.m., a Corrections Officer approached plaintiff to take a glucose test.  Plaintiff advised the officer that he had just finished breakfast, but the officer advised that this was the only time he would be available to take the test.

On December 9 at 4:30 a.m., plaintiff requested another test.  It was administered and revealed a glucose level of 47.  Later that day, plaintiff lost the vision in his right eye and experienced high blood pressure.  He brought this to the attention of a Corrections Officer who took plaintiff's blood pressure.  Plaintiff was taken to the hospital for further tests and treatment and he was discharged and returned to the MCJ at 9:30 p.m.

On the morning of December 10, plaintiff was examined by Nurse Thornton. Plaintiff informed her that his glucose levels were being monitored some of the time. The nurse asked plaintiff whether jail staff were getting anything for him when his readings were low and plaintiff replied in the negative.  She then had plaintiff transferred to the St. Mary Parish Law Enforcement Center where his condition could be monitored more closely.

## 2.   __Amended Complaint [Rec. Doc. 10]__

In March 2010, plaintiff filed a motion for leave to amend his complaint with a supporting affidavit and memorandum of law.  In the latter, he argued that "the use of untrained personel [sic] to make medical decisions is a systemic deficiency in staffing."[4]  His amended complaint [Rec. Doc. 12] clarifies that he is asserting claims against Warden Johnson and Supervisor LaBelle in both their individual and official capacities.

## 3.   FACTS ESTABLISHED IN MEDICAL RECORDS

Medical records concerning the plaintiff's incarceration at the Morgan City Jail were obtained and reviewed.   The records indicate that, at the time he was booked into the Morgan City Jail, the plaintiff advised that he was hypoglycemic and needed a high protein diet and a late night meal in order to keep his blood sugar level stable. The records show that the plaintiff filled out a sick call slip on December 6, 2009, stating that his blood sugar level was low, his hand was swollen, and his vision in one eye was blurry.  The plaintiff's medication list shows that, on that same date, December 6, 2009, a notation indicated that, as per the instructions of "A.J.S. Stacie LaBelle," the plaintiff's blood sugar level was to be checked twice a day.  Although

---

[4]        Rec. Doc. 10 at 4.

his blood sugar level was checked only once on December 7, it was checked twice on December 8.

The records show that, on an unspecified date (on or before December 6), his blood sugar level was 108, and that on December 6, the plaintiff refused to use the meter. When checked on December 7, his blood sugar level was 84; at 7:00 a.m. on December 8, it was 80; and at 3:00 p.m. that same day, it was 103.

The medical records further show that, when his blood sugar level was evaluated on the afternoon of December 8, 2009, the plaintiff complained of chest pain and was taken to the emergency room at Teche Regional Medical Center. He was diagnosed with atypical chest pain (described as chest pain not related to the heart), treated, and released that evening.

The next day, Nurse Kathy Thornton noted in the medical records that the plaintiff had been taken to the hospital the previous day with high blood pressure, and she recommended that he be moved to the parish jail so that he could be more closely monitored.

The medical records demonstrate that the plaintiff was booked into the St. Mary Parish Correctional Center that same day, on December 9, 2009.


**3.      Motion for Injunction [Rec. Doc. 13]**

On April 5, 2010, the plaintiff filed a motion for injunction, in which he alleged that the City of Morgan City was at fault for failing to have a "fill in nurse" when Nurse Kathy Thornton was on vacation for two weeks.  He also faulted the city for using untrained individuals to conduct screenings and allowing them to make medical decisions.  He alleged, "Morgan City Jail's customs, policies[,] and directives put prisoner's [sic] at risk especially if they had a serious medical condition."[5]  He concluded by stating, "There is credible evidence in this case that proves neglegiance [sic] on behalf of Morgan City, Herb Johnson[,] and Stacy Labelle.  This could have been prevented.  Therefore we feel there should be an injunction placed against Morgan City Jail and Herbert Johnson and Stacy Labelle."[6]  On April 6, 2010, plaintiff's motion for appointment of counsel and his motion for injunction were denied.  [Rec. Doc. 14]

## 4.    Plaintiff's Second Motion for Appointment of Counsel [Rec. Doc. 15]

On April 26, 2010, plaintiff filed a second motion for appointment of counsel. In addition to requesting counsel, plaintiff stated:

---

[5]     Rec. Doc. 13 at 2.

[6]     Rec. Doc. 13 at 4.

7

The complaint alleges that plaintiff was denied medical attention, and as a result to medical attention.  The plaintiff has loss of vision in one eye and blind vision in the other.  He also ended up in the hospital with cardiac arrest.  Morgan City Jail providing only sick call once per week is also considered unconstitutional.  Because the defendant [sic] had a serious medical condition.  In which was life threatning [sic] if not treated.  Also when the plaintiff finally was seen by medical staff two weeks after the fact.  He was prescribed medical care.  In the presence of two high ranking officers.  And was still denied medical care.  Also he was denied sick call and the grievance process.[7]

On May 12, 2010, his request was denied.  [Rec. Doc. 18]

### 5.   Motion to Compel Discovery [Rec. Doc. 16] and Motion for Default [Rec. Doc. 19]

On May 7, 2010, plaintiff requested an order compelling the defendants (who have not yet been served) to comply with plaintiff's requests for discovery.  On June 1, he moved for default judgment against the unserved defendants.

In support of the latter motion, he provided an affidavit that set forth the following factual allegations:

Plaintiff arrived at the MCJ at 11:15 p.m. on November 20, 2009; defendant Labelle was notified of plaintiff's medical condition; plaintiff was advised that the jail's glucose meter was inoperative.

---

[7]      Rec. Doc. 15 at 2-3.

On November 21, plaintiff requested a medical examination and was advised that Nurse Thornton was on vacation and would return in two weeks; Labelle advised plaintiff that he could receive medication if it was delivered from someone outside of the jail; she also advised plaintiff that "sick call was allowed once a week."

Between November 22 and December 3, plaintiff submitted three sick calls and two grievances.  On December 3, plaintiff was examined by Nurse Thornton; she prescribed medical care in the form of Morgan City Jail checking plaintiff's blood sugar level twice a day for a week.

On December 5, plaintiff submitted a grievance alleging that his blood sugar was not being monitored as ordered and that he was experiencing swelling and loss of vision.  His blood sugar levels were then checked revealing a level of 38.  On December 9, plaintiff complained of chest pain, sweating, and head ache; his blood pressure was taken, and he was transported to a nearby hospital where he was "stabilized" and then returned to the MCJ.  On December 9, plaintiff was examined by Nurse Thornton and transferred to the St. Mary Law Enforcement Center.

Plaintiff concluded by noting, "The city of Morgan City did not make any effort to provide medical staff while Kathy Thornton was on vacation in order to save money at the exspense [sic] of people's live's [sic] being endangered.  Also staff at

Morgan City [Jail] Herbert Johnson, Stacy Labelle were careless and reckless towards the medical needs of [plaintiff]."[8]

## LAW AND ANALYSIS

### 1.   SCREENING

When a prisoner[9] sues an officer or employee of a governmental entity pursuant to 42 U.S.C. § 1983, the court is obliged to evaluate the complaint and dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.[10]

A claim is frivolous if it lacks an arguable basis in law or in fact.[11]   A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent

---

[8]      Rec. Doc. 19 at 4.

[9]      Detainees awaiting trial are considered prisoners.  See 28 U.S.C. § 1915(h) which provides in part, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for... violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

[10]      28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

[11]      *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); see, *Denton v. Hernandez*, 504 U.S. 25 (1992).

with the allegations of the complaint.  Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true.[12]

A hearing need not be conducted for every *pro se* complaint.[13]  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone.[14]  In this case, however, the undersigned conducted a hearing on August 3, 2010, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), overruled on other grounds, *Neitzke v. Williams*, 490 U.S. 319 (1989).  During the hearing, the plaintiff was questioned by the Magistrate Judge concerning the factual allegations in his complaint.  The Magistrate Judge also ordered the St. Mary Parish Sheriff's Office to produce copies of the plaintiff's medical records covering the time period from November 20, 2009, when he was booked into the Morgan City Jail until December 9, 2009, when he was transferred to the St. Mary Parish Law Enforcement Center in Centerville, Louisiana.  Those records were produced, and they have been reviewed.  The dates, times, and events alleged in the complaint are not precisely mirrored in the medical records.

---

[12]     *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

[13]     *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir. 1991).

[14]     *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

District courts must construe *in forma pauperis* complaints liberally but they are given broad discretion in determining when such complaints are frivolous.[15]  A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[16]  Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."[17]

Plaintiff filed an original complaint, amended complaints, and numerous motions, all of which adequately detail his claims for relief, the evidence supporting those claims, and the relief sought on each claim.  Each fact alleged has been assumed to be true for the purposes of this report, and, since it appears that plaintiff has adequately set forth his claims for relief, further amendment of the pleadings would serve no useful purpose.

---

[15]     *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[16]     *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

[17]     *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

2.   **MEDICAL CARE**

**CONDITIONS OF CONFINEMENT OR EPISODIC ACTS**

Plaintiff is a pretrial detainee and not a convicted prisoner.  The constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment,[18] which provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[19] Neither substantive nor procedural due process violations can result from negligent acts or failures to act.[20]

To determine the appropriate standard for analyzing a detainee's due process claim, the Court must first determine whether the detainee is challenging a "condition of confinement" or an "episodic act or omission."[21]

A conditions of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement."[22]  In such cases, the harm is caused by the condition itself such as when "inadequate food, heating, or

---

[18]     See *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

[19]     U.S. Const. amend. XIV, § 5.

[20]     See *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

[21]     See *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc); *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996) (en banc); see also *Flores v. County of Hardeman*, 124 F.3d 736 (5th Cir. 1997).

[22]     See *Hare v. City of Corinth*, 74 F.3d at 644.

sanitary conditions themselves constitute miserable conditions."[23]  When a pretrial

detainee challenges the general conditions of confinement, as opposed to particular

acts or omissions, a constitutional violation exists only if the court finds that the

conditions of confinement are not reasonably related to a legitimate, non-punitive

governmental objective.[24]

Plaintiff has alleged that "[t]he use of untrained personel [sic] to make medical

decisions is a systemic deficiency in staffing;"[25] that "Morgan City Jail's customs,

policies[,] and directives put prisoner's [sic] at risk especially if they had a serious

medical condition;"[26] and finally, that "Morgan City did not make any effort to

provide medical staff while Kathy Thornton was on vacation in order to save

money."[27]  However, these claims are nothing more than conclusory allegations and

are insufficient to state a claim for which relief may be granted.  In any event, to the

extent that plaintiff complains of conditions of confinement, it is clear that the

---

[23]     *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

[24]     See *Hare*, 74 F.3d at 640 (citing *Bell*, 441 U.S. at 538-39); see also *Scott*, 114 F.3d at 53 (citing *Hare*).

[25]     Rec. Doc. 10 at 4.

[26]     Rec. Doc. 13 at 2.

[27]     Rec. Doc. 19 at 4.

complaint alleges fault on the part of the municipality of Morgan City as the policy maker for the MCJ.

## MUNICIPAL LIABILITY

Municipalities are "persons" within the meaning of § 1983.[28]  However, these governmental entities are liable only for their own acts and not those attributed to them by principles of *respondeat superior*.[29]  "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[30]

Therefore, a § 1983 plaintiff must, at a minimum, allege that the municipal action was taken with the requisite degree of culpability; and he must allege a direct causal link between the municipal action and the deprivation of federal rights.[31]

Causation sufficient to state a § 1983 claim requires that the local government unit itself be the actor.  Thus, the first inquiry in a municipal/parochial liability case

---

[28]   *Monell v. Dep't of Social Services. of New York*, 436 U.S. 658, 690 (1978).

[29]   *Id.* at 691-92.

[30]   *Id.* at 691.

[31]   *Bd. of the County Comm's of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."[32]

Here, plaintiff has, as shown above, asserted instances of municipal liability. He faults the City for failing to provide medical staff to take Nurse Thornton's place during her vacation.  However, plaintiff has not shown how this fault caused him any harm.  As noted above, plaintiff was booked into the MCJ on November 20.  He did not request medical attention until November 24, and then did not formally request medical attention until November 26 when he submitted his first sick call and discovered that Nurse Thornton was on vacation.  By his own admission, he did not request sick call again until December 2,[33] and he was then seen by Nurse Thornton the following day.  In any event, he did not claim any injury until either December 6 (in his original complaint) or December 5 (in his affidavit) and, by that time, Nurse Thornton was back from her vacation.  In other words, the failure to provide a nurse during the two weeks that Ms. Thornton was on vacation did not result in a constitutional violation sufficient to visit municipal liability on the City.

---

[32]       *Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

[33]       In his affidavit in support of default judgment, plaintiff maintained that he submitted three sick calls between November 22 and December 3; however, in his original complaint, he alleged only two sick call requests.  The medical records contain evidence of a single sick call, dated December 6, 2009.

Plaintiff also faulted Morgan City, alleging "the use of untrained personnel to make medical decisions is a systemic deficiency in staffing;"[34] and "Morgan City Jail's customs, policies[,] and directives put prisoner's [sic] at risk especially if they had a serious medical condition"[35]  However, plaintiff has not alleged any instance where "untrained personnel" made medical decisions in his case; nor has he otherwise pointed out specific customs, policies, and directives that put him or anyone else at risk.  In short, his claims against the municipality must be dismissed for failing to state a claim for which relief may be granted.

### DELIBERATE INDIFFERENCE

Plaintiff's complaint – insofar as it faults the Warden and Supervisor – complains not of general conditions of confinement, but rather of particular acts and omissions relative to the defendants' treatment of plaintiff's medical condition. When a detainee complains of a particular act or omission of one or more officials, the action may be characterized as an "episodic act or omission" case.[36]  When the detainee faults individual defendants for such an episodic act, in order to prevail, the

---

[34]    Rec. Doc. 10 at 4.

[35]    Rec. Doc. 13 at 2.

[36]    See *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *Hare*, 74 F.3d at 645.

plaintiff "'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of constitutional rights.'"[37]   An official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."[38]

Thus, to the extent that plaintiff complains of a "particular act or omission" – the denial or delay in medical treatment – in order to prevail, he must allege and demonstrate subjective deliberate indifference by the defendants.   Deliberate indifference in this context means that:  (1) the defendant-official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the defendant-official actually drew that inference; and (3) the defendant-official's response indicates he subjectively intended that harm occur.[39]   "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent

---

[37]     *Olabisiomotosho*, 185 F.3d at 526 (citing *Flores v. County of Hardeman*, 124 F.3d 736, 738-39 (5th Cir.1997)).

[38]     *Hare*, 74 F.3d at 650.

[39]     *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir. 2001).

to cause harm."[40]  If one of the components of the deliberate indifference test is not met, that is sufficient to deny relief.[41]

The pleadings and exhibits, taken as true for the purposes of this report, do not establish the subjective aspect of deliberate indifference; therefore, plaintiff fails to state a claim for which relief may be granted.  Plaintiff was incarcerated at the MCJ for a period of twenty days.  When he advised prison officials that he needed a glucose monitor, one was obtained within a day of his request and his blood sugar levels were tested.  Thereafter, his glucose levels were monitored on each day that he requested testing.  A notation was placed in his medical records, directly attributable to Supervisor Labelle, instructing that the plaintiff's blood sugar level was to be checked twice each day.  When he exhibited serious symptoms, he was taken immediately to a hospital for diagnosis and treatment, and the treatment he received was sufficient to warrant his return to jail on the same date.

In the final analysis, plaintiff alleges, at worst, negligence on the part of the named defendants.  Indeed, in his Motion for Injunction, plaintiff conceded that the "evidence in this case ... proves neglegiance [sic] on behalf of Morgan City, Herb

---

[40]     *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

[41]     *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

Johnson[,] and Stacy Labelle;"[42] and, in his affidavit in support of default judgment he alleged that the "staff at Morgan City [Jail] Herbert Johnson, Stacy Labelle were careless and reckless towards the medical needs of [plaintiff]."[43]   However, a complaint alleging negligence in diagnosis or treatment does not state a constitutional claim.[44]   Likewise, plaintiff's disagreement with diagnosis or treatment does not establish deliberate indifference.[45]   Finally, the medical records establish that Stacy Labelle instructed the jail staff to check the plaintiff's blood sugar level twice each day, as evidenced by the notation set forth in the records.  In short, having failed to establish deliberate indifference on the part the Warden or Jail Supervisor, plaintiff has failed to state a claim for which relief may be granted and his complaint must be dismissed on that basis.

**3.   MOTIONS**

As noted above, plaintiff has filed a motion to compel discovery [Doc. 16] and a motion for default [Doc. 19].  He has also filed an amended motion for default [Rec.

---

[42]     Rec. Doc. 13 at 4.

[43]     Rec. Doc. 19 at 4.

[44]     See *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

[45]     See *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Doc. 22] and a motion for speedy trial [Rec. Doc. 23].  When he filed those motions, plaintiff's complaint was being reviewed pursuant to 28 U.S.C. §§ 1915 and 1915A. This report is the result of that review.

The defendants have not been served; consequently, plaintiff's motions to compel discovery, for default judgment, and for a speedy trial are premature.  By order dated August 3, 2010, those motions were denied as premature.

## Conclusion and Recommendation

The undersigned finds that the complaint filed in this lawsuit by the plaintiff, Gary Randall Penick, as amended, fails to state a claim upon which relief can be granted.  Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 8th  day of October, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)